Opinion
COOPERMAN, J.
Defendant, Marina Pizzeria, a California corporation, has filed a timely appeal from the judgment (unlawful detainer) rendered on July 27, 1982, in favor of plaintiffs ordering that they recover from defendant possession of the premises commonly known and described as 20924-20926 Lassen Street, Chats worth, California.
Statement of Facts and Procedural History
From the settled statement and documents constituting the record on appeal, the following facts appear:
Plaintiffs had been doing business and occupying the premises located at and commonly known and described as 20924-20926 Lassen Street, Chats-worth, California, since on or about September 2, 1980, pursuant to a written assignment of lease executed by Barbara Tooley and Issac Tooley, as lessees, a lessor’s consent to assignment, signed by Abram Stone, Dina *Supp. 3 Stone, and Sam Maltz, as lessors, and an assignee’s assumption agreement, signed by plaintiffs.
On October 10, 1980, plaintiffs entered into an escrow agreement with Karon Enterprises, Inc., a California corporation, wherein plaintiffs promised to sell and Karon promised to buy the business being operated by plaintiffs on the subject premises, known as Pier 66 Restaurant, including among the assets of said business the goodwill thereof, the real property lease, leasehold improvements, and an equipment lease.
The foregoing escrow was to close when the “on sale” beer and wine license in the name of Barbara and Isaac Tooley was transferred to Karon, through a concurrent escrow.[1] The purchase price of the business was to be the total sum of $8,500.
On or about October 10, 1980, in accordance with escrow instructions, plaintiff Margaret A. Marvell assigned to Karon, on behalf of herself and plaintiff Varoush H. Hakopians, all of their right, title and interest in and to the lease of the subject premises. The lease was assumed by Karon on or about October 10, 1980, and the assignment was consented to by Maltz and Abram Stone on or about October 13, 1980.
On or about October 15, 1980, Karon went into possession of the subject premises pursuant to the specific provisions of the escrow agreement that such possession be granted by plaintiffs.
Mrs. Marvell testified that the assignment of lease to Karon had been deposited into escrow, and was to be effective “ . . . only upon full execution and delivery upon successful completion of the escrow.”
On behalf of defendant corporation, Samuel Maltz testified that he, and Abram and Dina Stone, lessors, had extended the lease term for an additional five years, and also permitted Karon to sublet the premises without lessors’ consent, to any Numero Uno Pizzeria. Maltz further testified that the lease had been assigned to defendant Marina by Karon. Maltz also testified that since October 15, 1980, rent for the subject premises had been received directly from defendant Marina, and/or its sublessor, Karon, and not from plaintiffs.[2] The court denied two offers of proof made by counsel for defendant corporation, as follows:
*Supp. 4 1. Counsel for Marina offered to prove through Karen Castillo, custodian of records for the escrow company handling the sales transaction, that several bills were submitted into escrow for expenses incurred by defendant Marina as a result of plaintiffs’ “ . . . alleged breach of the escrow agreement.” The trial judge ruled that such defense was irrelevant “ . . . that defendant’s rights were predicated upon transfer and delivery of the assignment at completion of the escrow. That the question of which party breached the agreement was reserved for another forum.”
2. Counsel for defendant Marina offered to prove, through a witness from the Department of Building and Safety “ . . . that the premises which were the subject of the agreement were in violation of local building ordinances, and to describe what repairs and changes are needed to be made to bring the premises up to code.” Counsel for defendant indicated that such testimony would be offered as proof of plaintiffs’ alleged breach of the escrow agreement. The court ruled that evidence as to why the escrow had not closed, or who was at fault, was irrelevant. The court indicated that it was concerned only with the fact that the escrow had not closed.
Out of the total consideration for the sale of the restaurant business from plaintiffs to Karon, in the sum of $8,500, the sum of $1,950 was paid upon the execution of escrow instructions. The balance of said consideration in the sum of $6,550, was to be paid at the close of escrow.
Approximately 17 months after the opening of escrow, plaintiffs caused a 3-day notice to quit to be served upon defendant Marina on March 18, 1982. Upon the refusal of defendant to vacate the subject premises, pursuant to the notice, plaintiffs filed a complaint for unlawful detainer in the Los Angeles Municipal Court on April 12, 1982.[3]
Defendant Marina filed a timely notice of appeal from the judgment in favor of plaintiffs, and, on November 12, 1982, secured from this court a peremptory writ of prohibition staying enforcement of said judgment pending the subject appeal, upon posting a bond in the sum of $12,500.
Issues on Appeal
Appellant Marina makes the following major contentions in its brief on appeal:
*Supp. 5 1. The trial court lacked jurisdiction to proceed in the case at bench under the unlawful detainer statute in that no landlord/tenant relationship existed between respondents and appellant;
2. The judgment of the court below is erroneous in that Karon Enterprises, Inc., a California corporation, appellant’s sublessor, was an indispensable party;
3. The judgment of the court below is erroneous in that even if the case at bench could have been maintained under the unlawful detainer statute, appellant Marina was entitled to a 30-day notice of termination rather than the 3-day notice served upon appellant; and
4. Even if it be found that a three-day notice was appropriate in the case at bench, the judgment of the court below was erroneous in that the agreement failed to specify the covenant upon which the termination was based, and further failed to provide appellant Marina with an opportunity, as an alternative, to cure the alleged breach of covenant.
Discussion
We address ourselves to appellant’s initial contention, that the trial court erred in granting respondents relief under the unlawful detainer statute, in that there was no landlord/tenant relationship between respondents and appellant Marina.
In responding to this issue, it is necessary to analyze carefully the facts of the transaction at bench, the specific provisions of the unlawful detainer statute, and applicable decisional law.
A review of the settled statement and of evidence referred to therein, discloses that respondents acquired the premises located at 20924-20926 Lassen Street, Chatsworth, California, on or about September 2, 1980, pursuant to an assignment of lease executed by Barbara and Isaac Tooley, the preceding lessees, and consented to by the lessors, Sam Maltz and Abram and Dina Stone. Respondents also leased restaurant furniture, fixtures, and equipment from Isaac and Barbara Tooley, as lessors.
On or about October 10, 1980, respondents entered into escrow to sell the. restaurant business, located on the subject premises, and conducted under the name of Pier 66, also known as House of Italy, to Karon Enterprises, Inc.
*Supp. 6 The sale was for the sum of $8,500, and included the lease of the premises, trade name, goodwill, leasehold improvements, and the equipment lease hereinabove referred to.[4]
According to the escrow instructions, the purchase and sale of the restaurant business was “ . . . subject to and contingent upon the lessor consenting to a [sic] assignment of the existing lease to the buyer herein.”
The escrow was to close upon: (a) physical transfer to Karon by the Department of Alcoholic Beverage Control of the on sale beer and wine license held by Isaac Tooley and Barbara Tooley on the subject premises; and (b) payment by Karon of the balance due on the purchase price in the total amount of $8,500.
No specific date for the closure of escrow was specified.
On the matter of possession, the escrow instructions stated as follows: “7. Possession shall be granted to and taken by buyer as of October 15, 1980, escrow not concerned with verification of same.”
Respondents made the following warranties to the buyer: “12. The seller does warrant to the buyer that fixtures and equipment will be in good working condition as of date of the buyers possession.
“13. The seller does warrant to the buyer that the business and premises are in fit condition to pass any licensing/permit requirements of any governmental agency having jurisdiction over same.”
From the settled statement it appears that lessors, the Stones and Maltz, gave written approval to the assignment of lease, as executed by respondents, that Karon assumed the lease, and that the document reflecting said transfer, consent, and assumption was deposited in escrow to be delivered to Karon at the close thereof.[5]
At or about the time of taking possession of the subject possession on October 15, 1980, Karon secured from the Stones and Maltz, owners and *Supp. 7 lessors of said premises, a five-year extension of lease, and permission to sublet to any Numero Uno Pizzeria franchise.[6]
For the 17-month period between October 15, 1980, and the service of the 3-day notice to quit on March 18, 1982, appellant Marina conducted a restaurant business on the subject premises. Although not clearly set forth in the settled statement, it appears conceded that Karon or appellant paid all rent on the subject premises from and after taking possession, pursuant to escrow instructions, on October 15, 1980, directly to the lessors.
The settled statement indicates that the escrow never closed.[7] However, the record on appeal does not state, nor is it alleged by either side, that the escrow was ever terminated or revoked.
The settled statement specifies that the trial judge grounded the judgment (unlawful detainer) upon his finding that appellant was a conditional licensee or a tenant at will within the meaning of Code of Civil Procedure section 1161.
The foregoing finding is of significance, in that because of the summary nature of unlawful detainer, it has been held that the person seeking to avail himself of the unlawful detainer statute must bring himself clearly within the terms of the relationships described in said statute. (Baugh v. Consumers Associates, Ltd. (1966) 241 Cal.App.2d 672, 674 [50 Cal.Rptr. 822].)
Code of Civil Procedure section 1161, defining unlawful detainer, is as follows:
*Supp. 8 “A tenant of real property, for a term less than life, or the executor or administrator of his estate heretofore qualified and now acting or hereafter to be qualified and act, is guilty of unlawful detainer:
“1. When he continues in possession, in person or by subtenant, of the property, or any part thereof, after the expiration of the term for which it is let to him; provided such expiration is of a nondefault nature however brought about without the permission of his landlord, or the successor in estate of his landlord, if any there be; including the case where the person to be removed became the occupant of the premises as a servant, employee, agent, or licensee and the relation of master and servant or employer and employee or principal and agent or licensor and licensee has been lawfully terminated or the time fixed for such occupancy by the agreement between the parties has expired; but nothing in this subdivision contained shall be construed as preventing the removal of such occupant in any other lawful manner; but in case of a tenancy at will, it must first be terminated by notice, as prescribed in the Civil Code.
“2. When he continues in possession, in person or by subtenant, without the permission of his landlord, or the successor in estate of his landlord, if any there be, after default in the payment of rent, pursuant to the lease or agreement under which the property is held, and three days’ notice, in writing, requiring its payment, stating the amount which is due, or possession of the property, shall have been served upon him and if there is a subtenant in actual occupation of the premises, also upon such subtenant.
“Such notice may be served at any time within one year after the rent becomes due. In all cases of tenancy upon agricultural lands, where the tenant has held over and retained possession for more than 60 days after the expiration of the term without any demand of possession or notice to quit by the landlord or the successor in estate of his landlord, if any there be, he shall be deemed to be holding by permission of the landlord or successor in estate of his landlord, if any there be, and shall be entitled to hold under the terms of the lease for another full year, and shall not be guilty of an unlawful detainer during said year, and such holding over for the period aforesaid shall be taken and construed as a consent on the part of a tenant to hold for another year. .
“3. When he continues in possession, in person or by subtenant, after a neglect or failure to perform other conditions or covenants of the lease or agreement under which the property is held, including any covenant not to assign or sublet, than the one for the payment of rent, and three days’ notice, in writing, requiring the performance of such conditions or covenants, or the possession of the property, shall have been served upon him, *Supp. 9 and if there is a subtenant in actual occupation of the premises, also, upon such subtenant. Within three days after the service of the notice, the tenant, or any subtenant in actual occupation of the premises, or any mortgagee of the term, or other person interested in its continuance, may perform the conditions or covenants of the lease or pay the stipulated rent, as the case may be, and thereby save the lease from forfeiture; provided, if the conditions and covenants of the lease, violated by the lessee, cannot afterward be performed, then no notice, as last prescribed herein, need be given to said lessee or his subtenant, demanding the performance of the violated conditions or covenants of the lease.
“A tenant may take proceedings, similar to those prescribed in this chapter, to obtain possession of the premises let to a subtenant or held by a servant, employee, agent, or licensee, in case of his unlawful detention of the premises underlet to him or held by him.
“4. Any tenant, subtenant, or executor or administrator of his estate heretofore qualified and now acting, or hereafter to be qualified and act, assigning or subletting or committing waste upon the demised premises, contrary to the conditions or covenants of his lease, or maintaining, committing, or permitting the maintenance or commission of a nuisance upon the demised premises or using such premises for an unlawful purpose, thereby terminates the lease, and the landlord, or his successor in estate, shall upon service of three days’ notice to quit upon the person or persons in possession, be entitled to restitution of possession of such demised premises under the provision of this chapter.
“5. When he gives written notice as provided in Section 1946 of the Civil Code of his intention to terminate the hiring of the real property, or makes a written offer to surrender which is accepted in writing by the landlord, but fails to deliver up possession at the time specified in said written notice, without the permission of his landlord, or the successor in estate of the landlord, if any there be.
“As used in this section, tenant includes any person who hires real property except those persons whose occupancy is described in subdivision (b) of Section 1940 of the Civil Code.” (Italics added.)[8]
No cases have been cited by counsel, and none have been found by this court, that specifically address the issue of whether the summary action *Supp. 10 of unlawful detainer is available as a remedy to the seller of an interest in real property through escrow, where the purchaser is given possession during escrow, pursuant to the provisions of escrow instructions, and the escrow thereafter does not close by reason of alleged default on the part of purchaser.
We do note, however, that the issue of the availability to seller of the remedy of unlawful detainer as against the purchaser of real property under a contract of sale, following default on the part of said purchaser, has been considered and determined by California appellate courts.
In Goetze v. Hanks (1968) 261 Cal.App.2d 615 [68 Cal.Rptr. 150], plaintiff-seller brought an unlawful detainer action against defendant-buyer. Defendant had entered into possession of the premises pursuant to an “Agreement for Sale of Real Estate.” The terms “buyer” and “seller” were used throughout the document.[9] Title remained in seller pending satisfaction of the terms of the agreement. However, defendant-buyer was permitted to remain in possession in the absence of default. The agreement called for 20 installment payments of $13,500 each and a final payment of $28,435.20, for a total purchase price of $298,435.20.
According to plaintiff-seller’s complaint, defendant-buyer failed to pay the first installment due under the agreement and certain taxes and assessments buyer was contractually obligated to pay.
The contract of sale stated further, as described by the court, that “In event of failure of buyer to comply with the whole or any term of the contract, the seller shall be released from all obligations to convey, buyer forfeits all rights, and seller shall be immediately entitled to possession of the land.” (Id., at p. 616.)
Following defendant-buyer’ s default, plaintiff-seller served a three-day notice to quit upon buyer, setting forth the default by defendant, and upon defendant’s failure to vacate the premises, proceeded to file an unlawful detainer complaint against defendant. Defendant filed a general demurrer to the complaint, which was sustained by the trial court.
On appeal, plaintiff-seller argued that defendant-buyer became the occupant of the premises as a licensee, that such status had been lawfully terminated, and that the defendant was subject to removal under the summary procedures provided by the unlawful detainer statute.
*Supp. 11 The Court of Appeal affirmed the judgment in favor of defendant on his general demurrer.
The court recognized that under Code of Civil Procedure section 1161, the summary action was available to remove a licensee from possession and occupancy of real property when the relationship had been lawfully terminated. However, the court noted that the contract of sale did not refer to seller and buyer as “licensor” and “licensee,” respectively, and stated that the agreement was, “ ... in essence, one of sale.”
The court also pointed out that a license is a mere privilege, which is revocable. In Goetze, the court explained that seller could not simply revoke the buyer’s possession at his will but only in the event of a default. The court also indicated that the payments on the purchase price provided for in the contract of sale were not rent or compensation for a license.
The court concluded as follows: “The vendor chose to sell his land. In doing so, he created the relationship of seller and buyer, not that of licensor and licensee. Certain legal remedies are available to him, but not the summary one of unlawful detainer.” (261 Cal.App.2d at p. 617.)
In Francis v. West Virginia Oil Co. (1917) 174 Cal. 168 [162 P. 394], the California Supreme Court held that a vendee in possession of land under a contract of sale, who is in default thereunder, does not become a tenant at will, subject to removal by the vendor pursuant to the summary method of unlawful detainer.
In Francis, defendant-vendee had gone into possession after execution of certain contracts of sale. Defendant corporation was assignee of E. S. Good, as vendee from plaintiff of the subject premises. Plaintiff-vendor executed a second contract, ratifying the assignment and substituting defendant corporation as vendee in place of Good.
Defendant corporation defaulted in an installment payment under the contract, and plaintiff-vendor sought to remove defendant from the premises by an unlawful detainer action, on the theory that defendant corporation had become a tenant at will, by reason of the foregoing default.
In affirming judgment in favor of defendant-vendee, the Supreme Court stated: “In order that such an action may be maintained the conventional relation of landlord and tenant must be shown to exist.” (Id., at p. 170).
The court further stated, at page 171: “A vendee in possession is not a tenant in any sense of the word, and only a tenant may be sued under the *Supp. 12 first subdivision of section 1161. The proceeding is purely statutory and is restricted in its operation to those persons specified in the statute. [Citations.] Failure of performance of his part of the contract of sale by the vendee in possession does not make him a tenant. [Citations.] The rule established by these and many other authorities is in accordance with justice. Even a vendee who has defaulted in his promised payments is entitled to an opportunity of showing his equities and presenting his defenses.”[10] (Italics added.)
While it is true that Goetze and Francis involved contracts of sale of fee interests in real property, while in the case at bench the business sale involved a leasehold as one of the assets being conveyed through an escrow, as to which possession was given during escrow, we are of the opinion that these factual differences do not require or allow a different legal analysis or conclusion.[11]
Accordingly, we are of the opinion that the court below erred in finding that appellant occupied the legal status of “conditional licensee” or “tenant at will,” and in granting respondents relief under the unlawful detainer statute.
The judgment of the court below is reversed and the bond posted by appellant is exonerated.[12] Appellant to recover its costs on appeal.
Reese, Acting P. J., concurred.

 The provisions of the concurrent escrow are not before us.

 The settled statement indicates that the trial judge ruled that the testimony of Maltz with respect to direct payment of rent was irrelevant, in that “ . . . until escrow closed, and the lease was transferred and delivered to defendants, the right to possession remained with plaintiff.”

 Although plaintiffs sought restitution of possession of the subject premises in their prayer for relief, it is to be noted that in paragraph 11 of the complaint plaintiffs alleged as follows: “That Karon Enterprises, Inc.’s refusal to close the escrow and to pay the purchase price to the plaintiffs is unreasonable, and that accordingly, plaintiffs are entitled to a rescission of and from said Escrow Instructions.” (Italics added.)

 The leased equipment was assignable by respondents without the approval of the Tooleys, the lessors of such equipment. The escrow provided that although the equipment was not to be conveyed through escrow, an assignment of the equipment lease was to be executed by respondents and deposited in escrow, for delivery to the buyer (Karon) upon close of escrow.

 The escrow instructions do not expressly so provide, but state “ a copy of the fully executed assignment will be deposited into escrow, upon its procurement, for permanent record.” (Italics added.)

The trial court sustained an objection to appellant’s offer of proof of documents showing the lease extension and addendum pertaining to assignability thereof, on the ground of irrelevance. However, respondents, in their brief, concede that appellant Marina is an assignee of Karon, and analyze appellant’s rights in the following manner: “ ... it has always been and is the position of the Respondents that Karon Enterprises, Inc., a California corporation, as assignor to the Appellants, surely could not either assign or give any greater rights or possessory interest to its assignee, the Appellants herein, than it had in said premises;” Respondents at no time have suggested that appellant Marina, as assignee of Karon, has lesser rights than Karon with respect to the subject transaction.

The trial court ruled that the reason for failure to close escrow was not relevant—only the fact of nonclosure was a relevant consideration.
However, from the briefs on appeal, it appears that it is respondents’ position that appellant breached the agreement by failing to deposit in escrow the balance due on the purchase price in the sum of $6,550 within a reasonable time. Appellant, on the other hand, asserts that respondents breached their specific warranties as to the condition of the premises, fixtures, and equipment, resulting in expenses exceeding the amount owed by appellant on the purchase price.

 It is to be noted that the relationship of licensor-licensee is mentioned only in subdivisions 1 and 3 of Code of Civil Procedure section 1161, and the status of tenant at will, only in subdivision 1. (See italicized portions of text of statute.)

 We note that in the case at bench, the escrow instructions do not refer to Karon as a licensee or tenant. The only reference to Karon contained therein is as a “buyer.” Respondents similarly are referred to as “seller,” and not as licensors or landlords.

 See also Greene v. Municipal Court (1975) 51 Cal.App.3d 446, 451 [124 Cal.Rptr. 139], which cites Goetze and Francis with approval.

 A leasehold is an interest in land, and constitutes property as much so as land held in fee. (See 42 Cal.Jur.3d, Landlord and Tenant, § 3, p. 20.) In addition, the escrow instructions in the case at bench constitute a contract of sale. (See Cal. Real Property Sales Transactions (Cont.Ed.Bar 1981) pp. 599-600.) Title to the assets being sold, including the leasehold, was not to pass to the purchaser, or its assignee or nominee, until the balance of the purchase price was paid, through escrow. In Goetze and Francis, supra, title to the fee was retained by seller until buyer had complied with the provisions of the contract of sale.

 In view of our determination, it is unnecessary for us to consider the remaining contentions of appellant on appeal.